UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL MAZUR,

                         Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS, SANDRA DURFEE, and
THOMAS STICHT

                         Defendants.
_____

**REPORT AND RECOMMENDATION**

Case No. 1:20-cv-624-JLS-JJM

In this action, plaintiff alleges: (1) discrimination under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§12101 *et seq.*; (2) retaliation under the ADA and Title VII of the Civil Rights Law of 1994 ("Title VII"), as amended, 42 U.S.C. §§2000e *et seq.*; and (3) deprivation of due process under 42 U.S.C. §1983; all arising from defendants' alleged suspension of plaintiff's employment. Complaint [1][1].

Before the court is defendants' motion to dismiss [8] the Complaint, in part, pursuant to Fed. R. Civ. P. ("Rules") 12(b)(1) and (6). This motion has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration. [9]. Having reviewed the parties' submissions [8, 11, 12], I recommend that the motion be granted in part and otherwise denied.

## BACKGROUND

The following factual allegations are taken from the Complaint [1] and are assumed true for the purpose of resolving defendants' motion to dismiss.

---

[1]     Bracketed references are to CM/ECF docket entries (unless otherwise noted). Page references are to CM/ECF pagination (upper right corner of the page).

Plaintiff, Dr. Daniel Mazur[2], was an employee of defendant New York State Department of Corrections and Community Supervision ("DOCCS") for "nearly three decades". [1], ¶¶ 10, 42-43. Neither Dr. Mazur's job nor his place of employment during his tenure are directly alleged in the Complaint, but the implication is that he was working as a dentist at the Wyoming County Correctional Facility during the relevant periods of time. See [1], ¶¶ 2-4, 21, 31; [8-1], p. 14. Defendants Sandra Durfee and Thomas Sticht, whom plaintiff refers to as Deputy Superintendent ([1], ¶ 27) and Superintendent (¶¶ 22, 23), respectively, were presumably plaintiff's supervisors during the relevant periods of time. See id., ¶¶ 22, 23, 27, 33, 44, 46.

On April 29, 2019, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Id., ¶ 8. The EEOC later issued a "Right to Sue" letter. Id., ¶ 9. Plaintiff had previously filed a charge of gender discrimination with the with the New York State Division of Human Rights ("NYSDHR") and "has a current case filed in Federal Court". Id., ¶¶ 25-26. While plaintiff does not provide a citation for this pending case, I take notice that Dr. Mazur is a plaintiff in another federal action, Mazur v. New York State Department of Corrections and Community Supervision, et. al, 1:14-CV-1051A-RJA-HKS ("Mazur I"). In that case, filed in 2014, plaintiff raised claims of gender discrimination under Title VII and deprivation of his rights to equal protection and due process in violation of 42 U.S.C. §1983. See Mazur I, [49]. That case is currently pending a decision from District Judge Richard Arcara on Magistrate Judge Kenneth Schroeder's Report, Recommendation, and Order dated December 30, 2019, which recommended granting defendants' motion for summary judgment in its entirety. See id.

---

[2] The Complaint does not state what plaintiff holds a doctorate in, but presumably dentistry. See [1], ¶¶ 21, 31.

In the current Complaint, filed on May 26, 2020, plaintiff raises three claims: (1) ADA discrimination; (2) retaliation under the ADA and Title VII; and (3) deprivation of due process under 42 U.S.C. §1983. [1], pp. 3-6. Regarding his claim of ADA discrimination, plaintiff alleges that he was "perceived as disabled" and cites an "official email" sent on some unspecified date in which defendant Sticht stated that "I question his mental health". Id., ¶¶ 16-17, 22. At another time, defendant Sticht stated that plaintiff does not "have a calm voice". Id., ¶ 23. "Defendants", on another unspecified date, suspended plaintiff from his position, and "respondent" is seeking his termination.³ Id., ¶¶ 18-19. Plaintiff alleges that he was qualified as he is had been performing his job for decades, and that dentistry is still being performed on inmates. Id., ¶¶ 20-21.

Regarding his claim for retaliation under Title VII and the ADA, defendant references his previously filed NYSDHR complaint and pending federal court action. Id., ¶ 25-26. Plaintiff alleges that an unspecified defendant effected his suspension after discovery had closed in the federal case. Id., ¶ 35. Plaintiff further alleges that Superintendent Sticht had, at some point in the context of the current "investigation", referenced plaintiff's pending federal case and criticized plaintiff's "history" with DOCCS. Id., ¶ 33.

Finally, for his claim alleging a §1983 Due Process violation, plaintiff alleges that he "has a property interest in his job", but was denied a pre-deprivation hearing prior to his suspension by "[d]efendants". Id., ¶¶ 40, 44, 46. Plaintiff does not identify the source of that property interest, but cites the fact that DOCCS is a "public employer" and his three-decade employment history with that agency. Id., ¶¶ 41-43.

---

³      Plaintiff alternates between referring to himself as plaintiff and "complainant" and the defendant(s) as defendant and "respondent". See id., ¶¶ 18-20, 23, 28-30, 32, 34-3641-44, 46-50.

**DISCUSSION**

A. **Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 68 (2d Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This "plausibility standard" requires that the plaintiff state "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[T]he movant bears the burden of proof on a 12(b)(6) motion". Alce v. Wise Foods, Inc., 2018 WL 1737750, *2 (S.D.N.Y. 2018).

B. **Discrimination under the ADA**

For a claim of discrimination to survive a motion to dismiss, a plaintiff need not establish a prima facie case under the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002). Nonetheless, a "[plaintiff] must at least set forth enough factual allegations to plausibly support each of the . . . basic elements of a [discrimination] claim". Mandala v. NTT Data, Inc., 975 F.3d 202, 209 (2d Cir. 2020).

Thus, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that [1] the plaintiff is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of

New York, 795 F.3d 297, 311 (2d Cir. 2015) (numeration added); *see* Dooley v. JetBlue Airways Corp., 636 Fed. App'x 16, 21 (2d Cir. 2015) (applying this standard to ADA claim).

Here, defendants appear to concede that plaintiff has sufficiently alleged the first three elements, *i.e.*, that he was perceived as being disabled due to his "mental health",[4] and that he was suspended from a job for which he was otherwise qualified. Defendants' Memorandum of Law [8-1], p. 12 (*citing* [1], ¶¶ 12-13, 18, 20, 28). However, defendants argue that plaintiff fails to allege any causal relationship between that suspension and the alleged perception of disability. Id., pp. 11-13 (*citing* [1], ¶¶ 12-13, 18, 20, 28). Defendants point to plaintiff's "skeletal Complaint" that contains "[j]ust one" date; that is, the date that plaintiff filed a discrimination charge with the EEOC. Id. (*citing* [1], ¶ 8). Thus, the Complaint does not indicate when the alleged "mental health" comment was made by Superintendent Sticht or when plaintiff was suspended. Id. Defendants contend that this lack of timeline information, in addition to the lack of any other allegations as to any action or circumstances that would allow for inference of discrimination, fails to plausibly allege a claim of discrimination under the ADA. Id., pp. 12-13.

Plaintiff does not directly respond to this argument but instead argues generally against the imposition of a "heightened pleading standard" on its ADA and Title VII claims. Plaintiff's Memorandum of Law [11], pp. 3-6 (*citing* Twombly, 550, U.S. at 569 n. 14). Plaintiff argues that "under a notice pleading system", he is only required to "give defendant fair notice what the plaintiff's claim is and the grounds upon which is rests". Id., pp. 4-5 (*quoting* Littlejohn, 795 F.3d at 308-09). He insists that "detailed factual allegations", as sought by defendants, are not necessary. Id., p. 5 (*quoting* Iqbal, 556 U.S. at 678).

---

[4] Defendants do not challenge whether Superintendent Sticht's alleged comments reflected an earnest perception by defendants that plaintiff was mentally unwell.

Plaintiff is correct that, as discussed above, he is not required to establish a prima facie case of discrimination at the pleading stage. Nonetheless, he must "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 86 (*citing* Littlejohn, 795 F.3d at 310). This plausibility pleading standard is "forgiving, [but] not toothless." Mandala, 975 F.3d 202, 207 (2d Cir. 2020). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Thus, plaintiff "must at a minimum assert nonconclusory factual matter sufficient to 'nudge[ ] [its] claims'. . . 'across the line from conceivable to plausible' to proceed." E.E.O.C. v. Port Authority of New York & New Jersey, 768 F.3d 247, 254 (2d Cir. 2014) (*quoting* Iqbal, 556 U.S. at 680).

Here, in support of the element of discriminatory intent, plaintiff alleges that one of his apparent supervisors, Superintendent Sticht, sent an "official email" at some unspecified point in time in which he questioned plaintiff's "mental health". [1], ¶¶ 17, 22. At some other unspecified point in time, Superintendent Sticht stated that plaintiff "does not 'have a calm voice'". Id., ¶ 23. Finally, at some third unspecified point in time, plaintiff was suspended from his position. Id., ¶ 18.

While it is true that plaintiffs are often forced to rely on "bits and pieces" of information to cobble together a "mosaic" of intentional discrimination, s*ee* Vega, 801 F.3d at 86, plaintiff's meager allegations on this point are insufficient to nudge his claims of disability discrimination beyond mere possibility. Derogatory comments in the workplace "can support a finding of discriminatory intent when 'a plaintiff demonstrates that a nexus exists between the allegedly discriminatory comments and defendant's decision to discharge the plaintiff.'" Nidzon

v. Konica Minolta Business Solutions, USA, Inc., 752 F. Supp. 2d 336, 351 (S.D.N.Y. 2010). In that regard, "courts examine whether the comment was made by a decision maker, whether the comment related to the employment decision at issue, and the closeness in time of the action and the remark". Id.

However, assuming the alleged comments by Superintendent Sticht were indeed discriminatory, there are simply no facts pled which causally connect those comments to the alleged adverse action. Plaintiff does not allege that these comments were made in conjunction with his suspension, or even that such comments were made close in time to such suspension. They could have been made close in time to plaintiff's suspension or, as defendants suggest, "twenty years ago". Defendants' Memorandum of Law [8-1], p. 13. Accordingly, I find that these allegations fail to set forth at least minimal support for the proposition that plaintiff's suspension was motivated by discriminatory intent and recommend that plaintiff's first cause of action be dismissed.

Nevertheless, Rule 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *See* Foman v. Davis, 371 U.S. 178, 182 (1962); Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990) ("[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'") (*quoting* 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989)). Therefore, such dismissal should be without prejudice to replead.

C.     **Retaliation under the ADA and Title VII**

    1.     **ADA retaliation as against all defendants**

Defendants next contend that plaintiff's claim for retaliation under the ADA must be dismissed because there is no allegation of any protected activity under that act, such as a request for accommodation or previous complaint involving disability discrimination. [8-1], pp. 13-15.  Defendants further argue that, even if plaintiff had alleged a protected activity, the Complaint lacks any information regarding a temporal or other relationship between the protected activity and his suspension. Id., p. 14.  Plaintiff does not specifically respond to this point.  Defendants do not contest plaintiff's Title VII retaliation claim.

Under the ADA, it is unlawful to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated - or took an adverse employment action - against [plaintiff]; (2) because [plaintiff] has opposed any unlawful employment practice." Vega, 801 F.3d at 90.  "Retaliation occurs when an employer takes action against an employee . . . because he engaged in protected activity - complaining about or otherwise opposing discrimination." Id. at 91.

Here, plaintiff makes no allegation of any protected activity "under this chapter", i.e., the ADA. See 42 U.S.C. § 12203(a).  He alleges that he filed a previous complaint to the Division of Human Rights "based on gender" and a "current case filed in Federal Court", which

was also premised on gender discrimination.[5] [1], ¶¶ 25, 26. There is no mention in the Complaint (or elsewhere) of a request by plaintiff for accommodation or having complained previously about disability discrimination. These allegations are, if anything, those of Title VII retaliation, not ADA retaliation. Accordingly, I recommend that plaintiff's claim for ADA retaliation under his second cause of action be dismissed, with leave to replead. See Foman v. Davis, 371 U.S. at 182; Ronzani v. Sanofi S.A., 899 F.2d at 198.

    2.    **ADA and Title VII retaliation as against the individual defendants**

Defendants further argue, "[i]n an abundance of caution", that to the extent the Complaint can be read to assert ADA and Title VII claims against defendants Durfee and Sticht individually, those claims should be dismissed because those statutes do not provide for individual liability. Defendants' Memorandum of Law [8-1], p. 20. Plaintiff does not respond to this point.

I agree with defendants. See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) ("the remedial provisions of Title VII, including § 2000e-5, do not provide for individual liability, . . . [and a]ccordingly . . . the retaliation provision of the ADA, which explicitly borrows the remedies set forth in § 2000e–5, cannot provide for individual liability"); Givens v. City of New York, 2012 WL 75027, *4 (S.D.N.Y. 2012) ("[s]imilar reasoning dictates that there can be no individual liability for discrimination"). Accordingly, I recommend that any surviving Title VII or ADA claims be dismissed as against the individual defendants with prejudice.

---

[5]     See Mazur v. New York State Department of Corrections and Community Supervision, et. al, 1:14-CV-1051A-RJA-HKS, at [49].

**D.     Due process violation under 42 U.S.C. §1983**

Defendants contend that plaintiff's §1983 claim must be dismissed because: (1) there is no allegation of a constitutionally protected property interest; (2) there is no allegation that the individual defendants were personally involved in the deprivation of such an interest; and (3) DOCCS and the individual defendants in their official capacity have immunity under the Eleventh Amendment from such claims. Defendants' Memorandum of Law [8-1], pp. 15-20.

Defendants' last point regarding state immunity is uncontested by plaintiff, and, in any event, I agree with defendants. *See* Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) ("[plaintiff's §1983] claims against the State of New York, [DOCCS], and . . . against all of the individual defendants in their official capacities . . . are barred by the Eleventh Amendment"). Therefore, I recommend that plaintiff's §1983 claim be dismissed to the extent it asserted against DOCCS or defendants Durfee or Sticht in their official capacities with prejudice.

**1.     Allegation of a constitutionally protected property interest**

Defendants contend that plaintiff fails to state a claim for denial of Due Process because the Complaint fails to allege that he was deprived of a property interest protected by the Fourteenth Amendment. Defendants' Memorandum of Law [8-1], pp. 17-18. Defendants argue that plaintiff's allegation that "Dr. Mazur has a property interest in his job" ([1], ¶ 40) is a legal conclusion and fails to establish the basis for such as property interest, such as a statute or a collective bargaining agreement. [8-1], pp. 17-18. They argue that the factual allegations of plaintiff's complaint merely set forth that he was employed with DOCCS, a public employer, for

nearly three decades and was suspended without a pre-deprivation hearing.[6]  Id., p. 18 (*citing* [1], ¶¶ 41-46).

Plaintiff disagrees and insists that this allegation sufficiently alleges a property interest in his employment.  Plaintiff's Memorandum of Law [11], pp. 6-8.  He argues that the existence of a property interest is a factual question, but also cites some general case law for the proposition that a constitutionally protected property interest may be created by operation of state law or contract.  Id., pp. 6-7 (*citing* Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985) (state law); Board of Regents v. Roth, 408 U.S. 564, 578 (1972) (contract of employment with state agency)).  Plaintiff declines to specify any specific statutory provision or contractual agreement that serves as the source of his asserted property interest, but he refers generally to the "Constitution of the State of New York and the Civil Service Law".  Id., p. 2.

Defendants point to New York Civil Service Law § 75(1) as a starting point for a source of a protected property interest.  Defendants' Reply Memorandum of Law [12], p. 5.  Section 75(1) states that: "[a] person described [hereafter] . . . shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."  N.Y. Civ. Serv. Law §75(1).  This section has been held to bestow upon covered employees a property interest in their continued employment.  See O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994).  Covered employees include, among others, those "holding a position by permanent appointment in the competitive class of the classified civil service" or those "holding a position in the non-competitive or labor class . . . who since his or her last entry into service has completed at least

---

[6]  Defendants point out that plaintiff never actually alleges he was suspended without pay; he alleges only that he was suspended and later states generally that "suspension without pay is a deprivation of property". [8-1], p. 18 (*quoting* [1], ¶ 45).

five years of continuous service in the non-competitive or labor class in a position or positions not so designated in the rules as confidential or requiring the performance of functions influencing policy." §75(1)(a), (c). While the effective coverage among these categories of state employees is exceedingly broad, there are some narrow exceptions. See id. at 689 ("the judicially-created independent officer exception"); N.Y. Civ. Serv. Law §41 (enumerating several specific "exempt class[es]" of employees); §75(1)(c) ("position[s] designated . . . as confidential or requiring the performance of functions influencing policy").

Having briefly reviewed these exceptions, it is not obvious to me that any of them apply in this situation. I find no examples of a dentist being excluded from coverage under §75(1), nor do defendants supply any. A more thorough analysis of this question will likely be required once all the relevant facts are disclosed. For now, "[t]he threshold questions are whether [plaintiff] has alleged a state law property interest, and whether the Fourteenth Amendment protects that interest." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Here, plaintiff has alleged that he was employed with DOCCS for nearly three decades and was suspended without a pre-deprivation hearing. [1], ¶¶ 41-46. This would seem to bring him squarely into the purview of Civil Service Law §75(1)(c). Without prejudice to any other facts or considerations that may later be presented, I conclude that plaintiff has alleged sufficient factual matter to plausibly allege a constitutionally protected property right to his continued employment, and that the alleged denial of a pre-deprivation hearing would violate such a right.

2. **Sufficiency of allegations as against the individual defendants**

Finally, defendants contend that plaintiff has failed to adequately allege that Defendants Durfee and Sticht were personally involved in the alleged constitutional deprivation.

[8-1], pp. 15-17. Plaintiff responds that the individual defendants' personal involvement is a "question of fact that must be assessed after discovery" and outlines several unalleged actions taken by defendants toward the end of removing plaintiff that he believes will be revealed in discovery. [11], pp. 8-11.

It is true, as defendants indicate, that "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The Second Circuit has held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).

Since we are merely at the pleading stage, plaintiff need not "show[] by evidence", but rather must make a plausible factual allegation that any of these conditions are satisfied. I find that plaintiff does so. Plaintiff alleges that "[d]efendants" - presumably all three defendants - "officially suspended Dr. Mazur", and that "[d]efendants did NOT give Dr. Mazur a pre-deprivation hearing". [1], ¶¶ 44, 46 (emphasis in original). Accordingly, plaintiff has alleged that the named defendants "participated directly in the alleged constitutional violation". See Colon, 58 F.3d at 873. While such a broad-brush allegation may not always suffice to allege personal involvement, I do not find it implausible that the Superintendent and Deputy Superintendent of a correctional facility would have had direct involvement in the suspension of

a professional-level employee at the facility. For the reasons above, I recommend that defendants' motion to dismiss with respect to plaintiff's third cause of action be denied.

## CONCLUSION

For the above reasons, I recommend that defendants' motion to dismiss [8] be granted to the extent it seeks dismissal of plaintiff's ADA discrimination and retaliation claims without prejudice; dismissal of the Title VII discrimination claim as against the individual defendants with prejudice; and dismissal of his §1983 claims as against Defendant DOCCS and the individual defendants in their official capacities with prejudice. In all other respects, I recommend that defendants' motion be denied.

Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by February 3, 2021. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 20, 2021

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge