UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL MAZUR,

                                 Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS, SANDRA DURFEE, and
THOMAS STICHT,

                                 Defendants.
_____

**REPORT AND RECOMMENDATION**

Case No. 1:20-cv-624-JLS-JJM

Before the court is defendants' motion for summary judgment [41][1] seeking dismissal of plaintiff Mazur's remaining claims of retaliation under Title VII of the Civil Rights Law of 1994 ("Title VII"), as amended, 42 U.S.C. §§2000e *et seq*., and deprivation of due process under 42 U.S.C. §1983. This motion has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration. [9]. Having reviewed the parties' submissions [41, 48, 49], I recommend that the motion be granted.

## BACKGROUND

**A.    Procedural History**

          Mazur commenced this action on May 26, 2022, asserting claims arising from two suspensions he received while he was employed as a dentist at Wyoming Correctional Facility by defendant New York State Department of Corrections and Community Supervision ("DOCCS"). Complaint [1]. Defendants thereafter filed a motion to dismiss, and in a January 20, 2021 Report and Recommendation [13], I recommended that the motion be granted in part and denied in part.

---

[1]    Bracketed references are to CM/ECF docket entries (unless otherwise noted). Page references are to CM/ECF pagination (upper right corner of the page).

In adopting that Report and Recommendation, Judge Sinatra ruled that "[i]n the event Mazur does not file an amended complaint, the only remaining claims are his Title VII retaliation claim against DOCCS and his Section 1983 claims against the individual Defendants in their personal capacities". March 23, 2021 Decision and Order [20] at 4. Because Mazur did not file an Amended Complaint, only those two claims remain.

B.   **Relevant Facts**

The relevant facts are largely undisputed. In opposing defendants' motion, Mazur has failed to submit an opposing statement of facts. [48]. Therefore, the statements in defendants' Statement of Undisputed Fact ("SOUF") [42-2] are "deemed admitted for purposes of the motion". Local Rule of Civil Procedure 56(a)(2); see Allah v. Latona, 2021 WL 1969977, *1 (W.D.N.Y. 2021). However, I remain mindful that "[r]eliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record". New York State Teamsters Conference Pension and Retirement Fund v. Express Services, Inc., 426 F.3d 640, 648 (2d Cir. 2005).

**Mazur's Employment**

Mazur has worked as a dentist at Wyoming Correctional Facility from 1991 through the present. SOUF [42-2] ¶¶7-8, 10. His duties include managing the dental clinic and supervising the dental staff. Id., ¶9. At all relevant times, the dental staff included Beth Skalski, a dental hygienist, and Dr. Hanna Dryjski, a part-time dentist. Id., ¶¶11-12. Defendant Thomas Sticht is and was employed as the Superintendent of Wyoming Correctional Facility. Id., ¶13.

Defendant Sandre Durfee was, until July 18, 2018, employed as the Deputy Superintendent of Administration at Wyoming. Id., ¶14.

As a dentist employed by DOCCS, Mazur is a member of the Public Employees Federation ("PEF") union. Id., ¶65. The terms of Mazur's employment were, at the relevant times, dictated by the 2016-2019 Professional, Scientific, and Technical Services Unit Agreement ("CBA") between PEF and the State of New York. Id., ¶66; Exhibit F [41-6] at 472. Article 33.4(a) of the CBA, regarding "Suspension or Temporary Reassignment Before Notice of Discipline", provides that:

> "(a) Prior to the service of a notice of discipline or the completion of the disciplinary procedure set forth in Section 33.5, an employee may be suspended without pay or temporarily reassigned by the appointing authority, or the authority's designee, in his/her discretion, only pursuant to paragraphs (1) and (2) of this subdivision.
>
> (1) The appointing authority or his/her designee may, in his/her discretion, suspend an employee without pay or temporarily reassign him/her when a determination is made that there is probable cause that such employee's continued presence on the job represents a potential danger to persons or property or would severely interfere with operations. A notice of discipline shall be served no later than five (5) calendar days following any such suspension or temporary reassignment.
>
> . . .
>
> (c)(1) Suspensions without pay and temporary reassignments made pursuant to this Section shall be reviewable by a disciplinary arbitrator in accordance with provisions of Section 33.5 to determine whether the appointing authority had probable cause."

Exhibit F, [41-6] at 481.

### The May/June 2018 Incidents

On May 10, 2018, Skalski and Dryjski were in the dental clinic preparing to work on a patient when Mazur allegedly entered and began yelling at Dryjski for failing to restock needles. Id., ¶24. On May 11, 2018, Skalski entered Mazur's office, where he allegedly yelled

and cursed at her. Id., ¶26.  The following day, Mazur asked Skalski to meet at a park to discuss the incident, where they engaged in brief argument before agreeing to "start fresh" the next day. Id., ¶28.  Skalski and Dryjski informed Durfee of these issues, who in turn notified Sticht. Id., ¶¶25, 30, 31. Sticht notified the Office of Special Investigation (OSI), which initiated an investigation regarding the incidents. Id., ¶31. On June 3, 2018, Mazur used expired dental cement to treat a patient and instructed Dryski to use expired dental cement as well. Id., ¶¶32-33. Other incidents involving Mazur yelling at Skalski and Dryjski occurred on June 6 and 7, 2018. Id., ¶¶33-35.  Skalski and Dryjski reported these incidents as well, with Skalski reporting that she was "in fear of her safety". Id., ¶¶36-37.  On June 7, 2018, the dental clinic was closed and Mazur was placed on administrative leave with pay. Id., ¶¶38-39.

### The July 6 Suspension

On June 12, 2018, while Mazur was on administrative leave, a "routine" workstation "frisk" of the dental clinic was conducted. Id., ¶41.  This was carried out pursuant to a November 2014 memo from the DOCCS Deputy Commissioner requiring quarterly workstation "frisks". Id., ¶17.  In a January 2018 memo, the DOCCS Deputy Superintendent of Security designated the areas of the facility that would be subject to such a search in the following quarter. Id., ¶18.  The dental clinic was included on this list. Id.  The June 12 frisk revealed materials in Mazur's desk that were alleged to be contraband, including various unsecured dental tools and expired antibiotics. Id., ¶43; Exhibit A [41-6] at 215.

On July 6, 2018, Mazur was served with a Notice of Suspension and was suspended without pay, citing possession of contraband. SOUF [41-2], ¶45; [41-6] at 212-13. Mazur was permitted to use his accrued leave and opted to do so. SOUF [41-2], ¶45.  On July 9,

2018, Mazur was served with a Notice of Discipline ("NOD"), which itemized the contraband items, and indicated that DOCCS was seeking his dismissal from service. Id., ¶48; [41-6] at 215-16.

Mazur filed a grievance and arbitration ensued. SOUF [41-2], ¶¶70-71. The arbitrator found that "none of the items listed in the NOD were contraband under either DOCCS policy or the tool control curriculum guide". [41-6] at 210. The arbitrator accordingly found that the proposed penalty of dismissal was inappropriate, and that Mazur's July 6 suspension was inconsistent with the article 33 of the CBA. Id. at 210-11. The arbitrator found Mazur not guilty of the charges in the NOD, and ordered that he be immediately returned to his position with back pay. [41-6] at 162, 210-211.

### The November 19 Suspension

During this time, an OSI investigation was underway regarding the May and June 2018 incidents among Mazur, Ms. Skalski and Dr. Dryjski. SOUF [41-2], ¶50. On August 7, 2018, OSI concluded its investigation and found the allegations of harassment against Mazur to be substantiated. Id., ¶51. The matter was referred to Labor Relations. Id. On November 19, 2018, Mazur was served with Notice of Suspension, informing him that due to that conduct, he was suspended without pay. Id., ¶52; Exhibit C [41-6] at 240. Mazur declined to use his accruals. Id. Shortly thereafter, Mazur was served with a NOD regarding these incidents and informed that DOCCS was again seeking his dismissal. Id., ¶53; Exhibit C [41-6] at 237-39.

Mazur again filed a grievance, and a second arbitration was conducted. Id., ¶¶77-78. This time, the arbitrator found that just cause existed to support two of the seven charges against Mazur, specifically, for unprofessional conduct/communications. [41-6] at 231-32.

However, he found that the appropriate penalty for this conduct was not dismissal but a letter of reprimand. Id. at 232. He further found that Mazur's suspension was not effected in accordance with CBA, as the suspension notice failed to allege that Mazur's "continued presence . . . on the job would severely interfere with (rather than merely interrupt) operations". Id. at 233. The arbitrator ordered that Mazur be reinstated with back pay. Id. at 234-35. A letter of reprimand was issued to Mazur on January 22, 2020. Id. at 218.

### The Parallel Federal Action

At all relevant times, Mazur was a plaintiff in another federal action, Mazur v. New York State Department of Corrections and Community Supervision, et. al, 1:14-CV-1051A-RJA-HKS ("Mazur I"). Mazur filed that action in 2014, raising claims of gender discrimination under Title VII and deprivation of his rights to equal protection and due process in violation of 42 U.S.C. §1983. See Mazur I, [49]. The parties agree that fact discovery in that case concluded on March 15, 2018. See Defendants' Memorandum of Law ("MOL") [41-1] at 8. In October of 2018, defendants moved for summary judgment (Mazur I, [43]), which was later granted and the case dismissed. Mazur I, 2021 WL 5166210, *1 (W.D.N.Y. 2021).

### DISCUSSION

Defendants now move for summary judgment on the remaining Title VII and Due Process claims. Defendants argue that, as a matter of law: (1) DOCCS did not retaliate against Mazur; (2) defendant Durfee lacked personal involvement in the Due Process claim; (3) Mazur's Due Process rights were not violated; (4) Mazur's claims are subject to Mt. Healthy City School

District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); (5) Mazur cannot establish damages. Defendant's MOL [41-1] at 5-15.

A.      **Summary Judgment Standard**

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

B.      **Retaliation under Title VII by Defendant DOCCS**

"Retaliation claims under Title VII . . . are . . . analyzed under the McDonnell Douglas burden-shifting test." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (*citing* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Under that test, plaintiff must first establish a prima facie case of retaliation. Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010).  If he can do so, the burden then shifts the employer to "articulate a legitimate, non-retaliatory reason for the adverse employment action". Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the employer so demonstrates, then the burden shifts back to the plaintiff to establish that the employer's "non-retaliatory reason is a mere pretext for retaliation" and that retaliation was the "'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor". Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 845 (2d Cir. 2013).  Mazur's claim fails at both the prima facie stage and the pretext stage.

### 1. **Prima Facie Retaliation**

"To establish a prima facie case of retaliation, [plaintiff] must show (1) that [he] participated in a protected activity, (2) that []he suffered an adverse employment action, and (3) that there was a causal connection between h[is] engaging in the protected activity and the adverse employment action." Gorzynski, 596 F.3d at 110. Defendants do not contest the first two elements, and focus their argument instead on the final element of causal connection. Defendants' Memorandum of Law [41-1] at 6. Mazur does not offer much on this point, asserting instead that "[t]his is for [d]efendant to prove not for [p]laintiff to disprove". Mazur's MOL [48] at 9.

Defendants focus on the temporal proximity among the adverse actions and the protected activity, here, the Mazur I lawsuit. Defendants' MOL [41-1] at 6-8. Indeed, one way to demonstrate a causal connection in the absence of direct evidence is for the plaintiff "to show that the retaliatory actions closely followed the protected activity o[r] that there was a reasonably close temporal proximity between the two." Figueroa v. Johnson, 109 F. Supp. 3d 532, 549 (E.D.N.Y. 2015) aff'd, 648 F. App'x 130 (2d Cir. 2016). Defendants' argument focuses on one date, March 15, 2018, as the undisputed close of discovery in the Mazur I case. Mazur referenced the close of discovery as a relevant date in his deposition. [41-6] at 88.[2] The two suspensions at issue here occurred nearly four and eight months after this date, respectively, and Defendants argue that this gap in time cannot raise an inference of discrimination. [41-1] at 6-7.

---

[2] "Q. And when you say [the July 6th suspension was] 'championed by DSA Durfee,' what do you mean exactly?

A. Well, in the ongoing federal lawsuit discovery had just closed and DSA Durfee was very close to retiring. She was a couple weeks away from officially retiring and this was her last chance to get back at me for suing her, for suing DOCCS." Mazur Deposition Transcript [41-6] at 88.

The focus on this particular date - the close of discovery - presents an initial question. The parties cite no case for the proposition that the close of discovery in a discrimination case is, in itself, a protected activity from which an alleged act of retaliation can be measured. In fact, I find cases that suggest otherwise. *See* Rivers v. New York City Housing Authority, 2014 WL 12829494, *8 (E.D.N.Y. 2014) ("the close of discovery, a date fixed by the court, is not protected activity").

Title VII prohibits employers from retaliating "against any . . . employee[ ] . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §2000e-3(a). The statute, therefore, requires an element of participation in a Title VII proceeding. The caselaw diverges as to whether the mere existence of pending Title VII litigation, without more, is sufficient to create an inference of retaliation for acts occurring during the time the case is pending. *Compare* Lewis v. Hanson, 2020 WL 1812556, *13 (N.D.N.Y. 2020) ("[w]here, as here, the alleged adverse action occurred in response to ongoing litigation, . . . there is adequate 'temporal proximity' to find causation") *with* Redd v. New York State Division of Parole, 923 F. Supp. 2d 371, 388-89 (E.D.N.Y. 2012) ("the court seriously doubts that every single activity a plaintiff conducts in connection with an ongoing litigation can constitute a separate 'protected activity' that would restart the causation clock; if that were true, just about any adverse employment action taken during a lengthy discrimination case could be considered the result of retaliatory animus").

Some courts have circumvented this issue by focusing on the temporal proximity to a discrete element of litigation involving plaintiff's participation. *See, e.g.*, Oliver v. City of New York, 2022 WL 455851, at *26 (S.D.N.Y. 2022) (finding settlement of the previous action

to constitute protected activity); Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 446-47 (2d Cir. 1999) (finding alleged wrongful acts within one month of receipt of deposition notices may be retaliation).

The Second Circuit has declined to offer specific guidance on the issue, and has also "not identified an outer limit beyond which a temporal relationship is too attenuated to support a finding of causality". Kim v. Columbia University, 460 F. App'x 23, 25 (2d Cir. 2012) (Summary Order).  Instead, it is left to the court to "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009).

In this context of this case, it is difficult to draw any inferences about temporal proximity.  The only date relevant to the Mazur I lawsuit provided by the parties is the March 15, 2018 close of discovery, a date of dubious inferential value. See Rivers, 2014 WL 12829494 at *8. Moreover, "if [an] employee is relying solely on indirect evidence of causation, he must still plead, and ultimately prove, that the adverse action was close in time to some form of protected activity of which the alleged wrongdoer was aware". Williams v. Metro N. R.R., 2016 WL 4400307, *3 (S.D.N.Y. 2016), adopted, 2016 WL 5390904 (S.D.N.Y. 2016).

It is uncontested that the alleged perpetrators in this case were unaware of the discovery deadline (see SOUF [41-2], ¶¶57, 64), and Mazur "assert[s] no facts from which it could plausibly be inferred that any supervisor who initiated disciplinary proceedings against him did so shortly after learning of the filing or prosecution of [his] earlier case". See Williams, 2016 WL 4400307 at *3. These shortcomings preclude an inference of prima facie retaliation.

### 2. Pretext/But-For Causation

In any event, "temporal proximity alone is not enough to establish pretext in this Circuit". <u>Abrams v. Department of Public Safety</u>, 764 F.3d 244, 254 (2d Cir. 2014). Mazur offers no evidence rebutting the facially legitimate reasons given by defendants for the two suspensions, laboring under the mistaken impression that it is sufficient for plaintiff to establish a prima facie case. *See* Mazur MOL [48] at 9 ("[t]hus, if Plaintiff has evidence of a prima facie case, summary judgment must be denied and the case must be tried before a jury"), 15 ("[i]f the employer offers a reason, that reason must be tested by a jury for its credibility").

Mazur attaches an email discussion involving Sticht and Durfee dated June 6, 2018 (*see* [48-1]), in which they react to an email from Mazur complaining about Ms. Skalski's work performance and requesting permission to counsel her. <u>Id.</u> at 1. Durfee, in forwarding the email to Sticht, states that "[s]omething needs to be done about the situation down there [in the dental clinic]", and deduces that Mazur "is retaliating against both B. Skalski and Dr. Dryjski with constant threats of counseling". <u>Id.</u> Sticht thereafter forwarded Durfee's email to another DOCCS employee, commenting that "[Mazur] just doesn't get better" and that "I question his mental health". <u>Id.</u> The email chain contains no reference, express or implied, to the pending federal litigation.

Mazur nonetheless points to Durfee's reference to retaliation as proof "retaliation was on her mind". [48] at 10. Any fair reading of Durfee's email compels the conclusion that she was referring to Mazur's allegedly retaliatory actions against his subordinates, presumably relating to their complaints of harassment against him in the weeks prior. *See* SOUF [41-2] at ¶¶25, 30, 31, 36-37. The unsupported suggestion that Durfee's use of the word "retaliating" somehow betrayed some internal desire to retaliate against Mazur is the type of "speculation and

-11-

conjecture" that is plainly insufficient to defeat summary judgment. *See*, *e.g.*, Kallinikos v. New York State Department of Corrections and Community Supervision, 481 F. Supp. 3d 76, 87 (E.D.N.Y. 2020); Jarnutowski v. Pratt & Whitney, 103 F. Supp. 3d 225, 238 (D. Conn. 2015). At best, this email chain establishes that there may have been other non-retaliatory motivations for suspending Mazur, which does nothing to satisfy his burden to show that the employer's proffered non-retaliatory reason "is a mere pretext for retaliation" or that retaliation was the "'but-for' cause of the adverse action". Zann Kwan, 737 F.3d at 845.

For these reasons, Mazur's Title VII retaliation claim should be dismissed.

**C.     Due Process claim under 42 U.S.C. §1983**

Defendants argue that Mazur's remaining §1983 claim must be dismissed because his due process rights were not violated, and because Durfee lacked personal involvement in the Due Process claim. Defendant's MOL [41-1] at 9-12.  The first argument is dispositive.

New York Civil Service Law §75(1) states that: "[a] person described [hereafter] . . . shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section".  N.Y. Civ. Serv. Law §75(1).  This section has been held to confer upon covered employees, such as Mazur, a constitutionally protected property interest in their continued employment.  *See* O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994). Generally, "[t]he due process clause requires a government employer to provide 'notice and opportunity for a hearing' before terminating an employee with a protected property interest in his employment". Faghri v. University of Connecticut, 621 F.3d 92, 99 (2d Cir. 2010).

The right to pre-deprivation notice and opportunity to be heard can also - but does not necessarily - apply to lesser deprivations, such as suspension without pay. See Gilbert v. Homar, 520 U.S. 924, 929 (1997) (rejecting the "suggest[ion] that suspension without pay must be preceded by notice and an opportunity to be heard in all instances" and reviewing relevant factors). Here, defendants do not contest the existence of general right to a pre-deprivation opportunity to be heard, nor Mazur's allegation that he did not receive such an opportunity prior to either of the two suspensions at issue.

Rather, as defendants argue, "Section 75 rights . . . may be modified or replaced by a collective bargaining agreement". Ciambriello v. County of Nassau, 292 F.3d 307, 314 (2d Cir. 2002). Here, the CBA provided a mechanism for the employer to suspend an employee "in his/her discretion" where the employer determines that "there is probable cause that such employee's continued presence of the job represents a potential danger . . . or would severely interfere with operations". Exhibit F, [41-6] at 481. It further provides that "[s]uspensions without pay . . . made pursuant to this Section shall be reviewable by a disciplinary arbitrator in accordance with provisions of Section 33.5 to determine whether the appointing authority had probable cause". Id.

Mazur responds that the arbitrator, in both instances, determined that his suspensions were "not consistent" or "not in accord with" the terms of the CBA, and were thus invalid. See [41-6], 210-11, 233. Regardless, it is undisputed that Mazur was reinstated and made whole for any lost wages and benefits resulting from the suspension. See id.

"[The Second Circuit has] held on several occasions that there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining

agreement". Adams v. Suozzi, 517 F.3d 124, 128 (2d Cir. 2008) (collecting cases); *see also* Coollick v. Hughes, 699 F.3d 211, 220 (2d Cir. 2012); Jordan v. County of Chemung, 264 F. Supp. 3d 497, 516 (W.D.N.Y. 2017) (holding that the CBA-defined grievance procedure was sufficient to satisfy due process where an employee was terminated without a pre-deprivation hearing). It has repeatedly held that "in the collective bargaining context . . . post-deprivation procedures, providing for a hearing to contest a challenged employment decision, are sufficient to satisfy due process." Coollick, 699 F.3d at 220; *see also* Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 213 (2d Cir. 2003); Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001) ("[i]n the context of a public employee, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards"). Accordingly, "[t]he Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy". Adams, 517 F.3d at 129; *see* Garland v. New York City Fire Department, 574 F. Supp. 3d 120, 129 (E.D.N.Y. 2021).

    Here, Mazur makes no showing that the post-suspension (but pre-termination) grievance procedures under the applicable CBA were inadequate. On the contrary, those procedures proved quite robust, as both times Mazur obtained immediate reinstatement and backpay for the period of his suspension. *See* [41-6] at 162, 210-11, 234-35. Indeed, Mazur remains employed by DOCCS. This CBA-provided procedure is clearly sufficient to satisfy constitutional standards. *See* Harhay, 323 F.3d at 213 ("[t]he CBA, which governed Harhay's employment, established a grievance and arbitration procedure, and Harhay took advantage of these procedures by filing two grievances that were considered by the Board and by pursuing arbitration . . . . [S]uch post-deprivation procedures . . . are sufficient to satisfy due process");

Locurto, 264 F.3d at 173; Jordan, 264 F. Supp. 3d at 517 ("[p]laintiff argues only that she was entitled to a pre-deprivation hearing . . . . Plaintiff's argument is contradicted by clear Second Circuit precedent . . . . [D]ue process requires only pre-termination notice if a collective bargaining agreement is in place and provides for post-termination grievances").

Mazur makes much of the arbitrator's determination that his suspensions were not effected in accordance the terms of the CBA. *See* [41-6], 210-11, 233. To the extent we are required to accept the arbitrator's conclusions of law, that is not a "claim of constitutional dimensions" but rather "a garden variety breach of contract claim". Murphy v. Board of Education of Oceanside Union Free School District, 2005 WL 2305009, *5 (E.D.N.Y. 2005); *see also* Carpenter v. Mohawk Valley Community College, 2022 WL 4482738, *6 (N.D.N.Y. 2022). To that end, such claim (or claims) have been addressed by the arbitrator's decisions.

For these reasons, Mazur's remaining §1983 claim against the individual defendants must be dismissed.

D.   **Other Arguments**

Defendants make other arguments, such as that Durfee lacks sufficient personal involvement in the §1983 claim, that Mazur's retaliation claims are subject to Mt. Healthy, 429 U.S. at 287, and that Mazur generally cannot establish damages. Defendant's MOL [41-1] at 10-11, 13-15.  I need not resolve those arguments in light of my conclusions above.

**CONCLUSION**

For the above reasons, I recommend that defendants' motion for summary judgment [41] be granted and that Mazur's remaining claims be dismissed. Unless otherwise

ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by February 3, 2023. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 20, 2023

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge